

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | |
|---|---|---|
| In re:     PELI POPOVICH HUNT, Debtor | Case No.: | 2:11-bk-58222-ER |
| | Adv. Nos.: | 2:13-ap-01007-ER and 2:13-ap-01008-ER |
| ELISSA D. MILLER, Chapter 7 Trustee,<br><br>                                                Plaintiff<br><br>v.<br><br>MIGUEL POPOVICH, an individual,<br><br>                                                Defendant | | **MEMORANDUM OF DECISION GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** |
| | Date:<br>Time:<br>Location: | September 29, 2015<br>11:00 a.m.<br>Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

# I. Introduction and Background[1]

---

[1] The pleadings in related adversary proceedings 2:13-ap-01007-ER and 2:13-ap-01008-ER are substantially identical. Adv. No. 2:13-ap-01007-ER pertains to property located at 610 Dresher Drive, Spring, Texas 77373; Adv. No. 2:13-ap-01008-ER pertains to property located at 614 Dresher Drive, Spring, Texas 77373. The properties are contiguous parcels that were transferred through the same series of transactions. The only material difference between the adversaries is the identity of the property. To simplify the record, the Court disposes of the two motions for summary judgment in this single ruling, which will be docketed in both cases. All references to the record refer

1

In these related avoidance actions, chapter 7 trustee Elissa D. Miller ("Trustee") seeks to avoid the 2011 transfer of two parcels of real property (the "Properties") from Peli Popovich Hunt, the debtor in the underlying bankruptcy case ("Debtor"), to Miguel Popovich ("Defendant"), the Debtor's brother. The Trustee's claims for relief are as follows:

1) Recovery of an intentionally fraudulent transfer pursuant to §544(b)[2] applying California Code of Civil Procedure ("CCP") §3439.04;
2) Recovery of a constructively fraudulent transfer pursuant to §544(b) applying CCP §3439.05;
3) Recovery of an intentionally fraudulent transfer pursuant to §548(a)(1)(A);
4) Recovery of a constructively fraudulent transfer pursuant to §548(a)(1)(B); and
5) Recovery of the Properties, or the value thereof, pursuant to §550(a).

On July 16, 2015, the Court entered an order continuing the hearing on the Trustee's Motion for Summary Judgment ("Motion for Summary Judgment") [Doc. No. 97] and scheduling a final hearing on the Motion for September 29, 2015 ("July 16, 2015 Order") [Doc. No. 112]. In the July 16, 2015 Order, the Court set forth tentative and preliminary findings with respect to the Motion for Summary Judgment. The Court directed Defendant to file a motion for leave to amend. Based on the record before it as of July 16, 2015, it was the Court's view that a properly amended complaint would present issues of fact sufficient to survive summary judgment.

Defendant filed a Motion for Leave to Amend [Doc. No. 116] on August 25, 2015, which the Trustee opposed. The Court denied the Motion for Leave to Amend as futile after determining that the proposed additional allegations were time-barred. In reviewing the additional briefing filed in connection with the Motion for Leave to Amend, it became apparent to the Court that Defendant had failed to demonstrate the existence of genuine issues of material fact. For the reasons set forth below, the Trustee's Motion for Summary Judgment is granted in its entirety.[3]

---

to documents filed in 2:13-ap-01007-ER, unless otherwise indicated. See note 3 for a complete listing of all pleadings considered by the Court in ruling upon the motion.
[2] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
[3] The Court has considered the following pleadings in determining the motion:
1) Filed in Adv. No. 2:13-ap-01007-ER (see note 1):
   a) Pleadings Pertaining to Trustee's Motion for Summary Judgment:
      i) Plaintiff's Motion for Summary Judgment or, in the Alternative, Partial Summary Adjudication ("Motion for Summary Judgment") [Doc. No. 97]
         (1) Notice of Motion Re: Plaintiff's Motion for Summary Judgment [Doc. No. 98]
         (2) Plaintiff's Request for Judicial Notice Re: Motion for Summary Judgment ("RJN") [Doc. No. 99]
         (3) Declaration of David J. Richardson in Support of Plaintiff's Motion for Summary Judgment [Doc. No. 100]
         (4) Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law Re: Motion for Summary Judgment [Doc. No. 101]
         (5) Appendix of Texas Case Law [Doc. No. 102]
      ii) Defendant's Opposition to Plaintiff's Motion for Summary Judgment [Doc. No. 109]
      iii) Plaintiff's Reply Brief in Support of Motion for Summary Judgment [Doc. No. 110]
   b) Related Pleadings Considered by the Court in Determining the Trustee's Motion for Summary Judgment:
      i) Complaint for Avoidance and Recovery of Fraudulent Conveyances Pursuant to 11 U.S.C. §§544, 548 and 550 [Doc. No. 1]
      ii) Defendant's Original Answer and Counterclaim ("Answer and Counterclaim") [Doc. No. 15]
      iii) Joint Pre-Trial Statement [Doc. No. 71]

## II. Undisputed Facts

The following facts are not in dispute.

- iv) Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 82] (Exhibit A contains Plaintiff's amended complaint, which the Court subsequently deemed to have been filed, Doc. Nos. 95 and 105)
- v) [Defendant Miguel Popovich's] Motion to Amend Answer and Counterclaim ("Motion to Amend") [Doc. No. 116]
  - (1) Notice of Motion to Amend Answer and Counterclaim [Doc. No. 117]
  - (2) Amended Notice of Hearing Re: Motion to Amend Answer and Counter-Claim [Doc. No. 126]
- vi) Plaintiff's Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 122]
  - (1) Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 123]
  - (2) Plaintiff's Appendix of Texas Case Law in Support of Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 124]
- vii) Reply to Opposition to Motion to Amend Answer and Counterclaim [Doc. No. 125]
- viii) Ruling Denying Plaintiff's Motion for Leave to Amend [Doc. No. 127]
- ix) In addition to the pleadings listed above, the Court also considered the pleadings listed in note 6, *infra*, but only for the purpose of establishing that Defendant's claim for rescission based upon fraud, undue influence, and mistake was raised for the very first time in opposition to the Motion for Summary Judgment.

2) Filed in Adv. No. 2:13-ap-01008-ER (see note 1):
  - a) Pleadings Pertaining to Trustee's Motion for Summary Judgment:
    - i) Plaintiff's Motion for Summary Judgment or, in the Alternative, Partial Summary Adjudication ("Motion") [Doc. No. 97]
      - (1) Declaration of David J. Richardson in Support of Plaintiff's Motion for Summary Judgment [Doc. No. 100]
      - (2) Request for Judicial Notice [Doc. No. 99]
      - (3) Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law Re: Motion for Summary Judgment [Doc. No.101]
      - (4) Appendix of Texas Case Law Filed in Support of Plaintiff's Motion for Summary Judgment [Doc. No. 102]
    - ii) Defendant's Opposition to Plaintiff's Motion for Summary Judgment [Doc. No. 110]
    - iii) Plaintiff's Reply Brief in Support of Motion for Summary Judgment [Doc. No. 111]
  - b) Related Pleadings Considered by the Court in Determining the Trustee's Motion for Summary Judgment:
    - i) Complaint for Avoidance and Recovery of Fraudulent Conveyances Pursuant to 11 U.S.C. §§544, 548, and 550 [Doc. No. 1]
    - ii) Defendant's Original Answer and Counterclaim [Doc. No. 16]
    - iii) Joint Pre-Trial Statement [Doc. No. 70]
    - iv) Motion to Amend Answer and Counterclaim [Doc. No. 116]
      - (1) Notice of Motion to Amend Answer and Counterclaim [Doc. No. 117]
      - (2) Amended Notice of Hearing Re: Motion to Amend Answer and Counterclaim [Doc. No. 125]
    - v) Plaintiff's Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 121]
      - (1) Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 122]
      - (2) Plaintiff's Appendix of Texas Case Law in Support of Opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim [Doc. No. 123]
      - (3) Reply to Opposition to Motion to Amend Answer and Counterclaim [Doc. No. 124]
    - vi) In addition to the pleadings listed above, the Court also considered the pleadings listed in note 6, *infra*, but only for the purpose of establishing that Defendant's claim for rescission based upon fraud, undue influence, and mistake was raised for the very first time in opposition to the Motion for Summary Judgment.

**A. Recordation of Deeds in 2007 and 2011 Pertaining to the Properties**

1. The Properties at issue are located at 610 Dresher Drive, Spring, Texas 77373 ("610 Dresher Property") and 614 Dresher Drive, Spring, Texas 77373 ("614 Dresher Property") (collectively, the "Properties"). The Properties are contiguous parcels that were transferred through the same series of transactions.
2. Defendant is a resident of the state of Texas. Pre-Trial Statement, Admitted Fact No. 6 [Doc. No. 71].
3. Defendant is Debtor's brother and is therefore an insider within the meaning of §101(31). *Id.*, Admitted Fact No. 7.
4. On December 24, 2007, Defendant executed a Cash Warranty Deed pertaining to the 610 Dresher Property, which provides in relevant part:
    > That MIGUEL POPOVICH hereinafter called "Grantor", whether one or more of the County of Harris and State of Texas, for and in consideration of $10.00, and other good and valuable consideration in hand paid by PELI LURDES HUNT[4] … hereinafter called "Grantee" whether one or more, the receipt and sufficiency of which is hereby expressly acknowledged and confessed: HAVE GRANTED, SOLD AND CONVEYED, and by these present do hereby GRANT, SELL AND CONVEY unto the Grantee above named … all of our undivided interests in the following described real property in Harris County, Texas, to-wit: Lot 468, BLOCK 25 of NORTH HILL ESTATES, SECTION 3.

    Richardson Decl., Ex. D [Adv. No. 2:13-ap-01008-ER, Doc. No. 100]; Pre-Trial Statement, Admitted Fact No. 8 [Adv. No. 2:13-ap-01008-ER, Doc. No. 70].
    The deed was notarized on December 27, 2007 and was recorded on December 28, 2007.
5. On December 28, 2007, Defendant recorded a Cash Warranty Deed pertaining to the 614 Dresher Property which, aside from the property's legal description, is identical to the 610 Dresher Deed (collectively, the "2007 Deeds"). Richardson Decl., Ex. C [Adv. No. 2:13-ap-01007-ER, Doc. No. 100]; Pre-Trial Statement, Admitted Fact No. 8.
6. On June 1, 2011, Debtor executed a Special Warranty Deed pertaining to both the 610 Dresher Property and the 614 Dresher Property ("2011 Deed"), which provides in relevant part:
    > That PELI LURDES HUNT, hereinafter called "Grantor", whether one or more of the County of Harris and State of Texas, for and in consideration of $10.00 and other good and valuable consideration in hand paid by MIGUEL POPOVICH … HAVE GRANTED, SOLD AND CONVEYED, and by these present do hereby GRANT, SELL AND CONVEY unto the Grantee above named … all of the following described real property in Harris County, Texas, to-wit: Lots 467 and 468 in Block 25 of NORTH HILL ESTATES, Section 3.

    Richardson Decl., Ex. E [Adv. No. 2:13-ap-01007-ER, Doc. No. 100]; Pre-Trial Statement, Admitted Fact No. 10.
    The 2011 Deed was notarized on June 2, 2011 and was recorded on June 7, 2011.

---

[4] The Debtor's name is "Peli Popovich Hunt," not "Peli Lurdes Hunt." The reason for the discrepancy in the deed is unclear from the record. All parties agree that "Peli Popovich Hunt" and "Peli Lurdes Hunt" are the same person. Pre-Trial Statement, Admitted Fact No. 9.

**B. Doctor Creditor Action**

7. In 2011, Debtor was a named defendant in an action captioned *Daniel A. Capen, M.D. et al. v. Robert W. Hunt, M.D., a Medical Corporation, Peli Popovich Hunt, and Peli Popovich Hunt, as Trustee of the Robert and Peli Hunt Living Trust, et al.*, Case No. BC397187, pending before the California Superior Court in Los Angeles County ("Doctor Creditor Action"). A jury trial in the Doctor Creditor Action commenced on April 25, 2011. Statement of Uncontroverted Facts [Doc. No. 101] at ¶¶ 22–23.
8. On May 19, 2011, a jury reached a verdict in the Doctor Creditor Action, awarding damages against a co-defendant of the Debtor in an amount of not less than $2,620,296.90. On October 14, 2011, a judgment against the Debtor in the Doctor Creditor Action was entered in the amount of $3,509,517.23 ("Doctor Creditor Judgment"). Pre-Trial Statement, Admitted Facts Nos. 11 and 12. The judgment was against the Debtor in her individual capacity and in her capacity as trustee of the Robert and Peli Hunt Living Trust. *Id.* The Doctor Creditor Judgment provides that all defendants to the Doctor Creditor Action "are and shall be jointly and severally liable for all of said monetary sums so awarded." *Id.*, Admitted Fact No. 13.

**C. Bankruptcy Case**

9. On November 23, 2011, Debtor filed a chapter 11 petition. *Id.*, Admitted Fact. No. 2.
10. In response to Question No. 3.c. on the Statement of Financial Affairs ("SOFA"), requiring the Debtor to list all payments made within one year immediately preceding the commencement of the case to or for the benefit of creditors who are or were insiders, the Debtor checked the box marked "None." *Id.*, Admitted Fact No. 37.
11. In response to Question No. 7 on the SOFA, requiring the Debtor to list all gifts or charitable contributions made within one year immediately preceding the commencement of the case, the Debtor checked the box marked "None." *Id.*, Admitted Fact. No. 38.
12. In response to Question No. 10 on the SOFA, requiring the Debtor to list all other property transferred within two years immediately preceding the commencement of the case, the Debtor checked the box marked "None." *Id.*, Admitted Fact No. 39.
13. On March 22, 2012, Debtor filed an Amended Schedule F. *Id.*, Admitted Fact No. 26. The Amended Schedule F, executed under penalty of perjury and certified as being true and correct, listed real property in the amount of $82,930.93 and personal property in the amount of $21,853.99. *Id.*, Admitted Facts Nos. 26 and 34–35. The Debtor did not list the Properties as an asset of her bankruptcy estate in either the initial schedules, the SOFA, or the Amended Schedules. Pre-Trial Statement, Admitted Fact No. 36 [Adv. No. 2:13-ap-01007-ER] (failure to list 610 Dresher Property); Pre-Trial Statement, Admitted Fact No. 36 [Adv. No. 2:13-ap-01008-ER] (failure to list 614 Dresher Property).

**D. Claims of Creditors**

14. On February 24, 2012, Horwitz Cron & Armstrong, LLP filed proof of claim 1-1 ("Horwitz Cron Claim"), asserting an unsecured claim in the amount of $87,171.34 for attorneys' fees and expenses incurred defending the Debtor in the Doctor Creditor Action. Pre-Trial Statement [Adv. No. 2:13-ap-01007-ER], Admitted Facts Nos. 24–25.

5

15. On May 4, 2012, the plaintiffs in the Doctor Creditor Action ("Doctor Creditors") filed a proof of claim, asserting an unsecured claim in the amount of $3,537,513.38 ("Doctor's POC"). Debtor filed an objection to the Doctor's POC, which the Court overruled on September 24, 2012. *Id.*, Admitted Facts Nos. 40–41.
16. On October 30, 2012, Lee Ackerman filed proof of claim 7-1 ("Ackerman Claim"), asserting an unsecured claim in the amount of $34,231.34 for attorneys' fees and expenses incurred defending the Debtor in the Doctor Creditor Action. *Id.*, Admitted Fact No. 42.
17. The Doctor Creditors, Horwitz Cron, and Ackerman were unsecured creditors of the Debtor's bankruptcy estate holding claims allowable under §502, and were also creditors of the Debtor at the time of the execution of the 2011 Deed. *Id.*, Admitted Fact No. 45.
18. Based on the initial schedules, the SOFA, the Amended Schedules, the Horwitz Cron Claim, the Doctor Creditors Claim, and the Ackerman Claim, the Debtor was insolvent at the time of the execution of the 2011 Deed. *Id.*, Admitted Fact No. 44.

### E. Property Tax Information

19. As of 2011, the 610 Dresher Property was appraised at $435,000 by Harris County taxing authorities. Richardson Decl., Ex. K.
20. As of 2011, the 614 Dresher Property was appraised at $139,707 by Harris County taxing authorities. *Id.* at Ex. L.

## III. Defendant's Opposition

Defendant's primary argument is that the 2011 Deed does not amount to a fraudulent transfer because, prior to the execution of the 2011 Deed, Defendant had acquired an equitable interest in the Properties. Defendant states that he transferred the Properties to Debtor in 2007 for only $10 on the expectation that Debtor would soon be receiving a large inheritance sufficient to pay market value for the Properties. Debtor's inheritance did not materialize and Debtor never paid Defendant market value for the Properties. As a result of this failure of consideration, the 2007 transfer conveyed only bare legal title to the Debtor. The 2011 Deed, Defendant asserts, simply confirmed Defendant's pre-existing equitable interest in the Properties.

## IV. Findings of Fact and Conclusions of Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (made applicable to these proceedings by Fed. R. Bankr. P. 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

6

genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing the Motion. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

### A. The Court Has Jurisdiction to Enter Final Judgment in this Core Proceeding

The Trustee's claims for relief—to avoid a fraudulent transfer and recover the transferred property on behalf of the estate—are core proceedings under 28 U.S.C. §157(b)(2)(H). The Court has jurisdiction to enter final judgment. Further, though no jurisdictional defects exist, the parties' failure to object to the Court's jurisdiction constitutes implied consent to the entry of final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

The Court has personal jurisdiction over the Defendant, who has repeatedly appeared and substantially participated in the merits of this action, even going so far as to request a jury trial.

### B. Court's Denial of Defendant's Motion for Leave to Amend

As discussed previously, the Court directed Defendant to file a motion for leave to amend. Defendant's additional allegation was a claim that the 2007 Deeds could be rescinded based upon fraud, undue influence, or mistake.

Upon review of the Trustee's opposition to Defendant's Motion for Leave to Amend, the Court determined that amendment would be futile because the proposed additional allegations were time barred:

> Here, the proposed amendment would be futile because the statute of limitations on Defendant's action for rescission has expired. Under Texas law, an action for rescission based upon fraud, undue influence, or mutual mistake has a four-year statute of limitations. *See Love v. Woerndell*, 737 S.W.2d 50, 52 (Tex. App. 1987), *writ denied* (Mar. 23, 1988). The limitations period begins to run when the fraud or mutual mistake was, or in the exercise of reasonable diligence should have been, discovered. *Perdue v. Cantrell (In re Cantrell)*, 88 F.3d 344, 347 (5th Cir. 1996). Defendant's own admissions establish that he demanded that Debtor transfer the Properties to him when it became apparent that Debtor's inheritance would not materialize. *See* Declaration of Miguel Popovich [Doc. No. 123, Ex. A] at ¶ 5 ("Peli Popovich Hunt never paid me anything or gave me any type of consideration for the 610 property or the 614 property. The sale of the business that she inherited did not occur or did not generate adequate funds to pay me for these properties. Eventually, by 2011 I told her that if she was not going to pay me for these properties that she needed to transfer them back to me."). At the very latest, Defendant was aware of any fraud, undue influence, or mistake in connection with the transfer of the Properties by June 1, 2011.[5] Accordingly, Defendant's claims for rescission based upon fraud or mistake became time-barred as of June 1, 2015.

---

[5] The record establishes that Defendant was aware of the fraud, undue influence, or mistake sometime before the June 1, 2011 transfer of the Properties from Debtor to Defendant. However, the record does not reflect the exact date upon which Defendant became aware of these facts. That date is immaterial given that the claims are time-barred in any event.

Ruling Denying Motion for Leave to Amend [Doc. No. 127] at 6–7.

At oral argument on the Motion for Leave to Amend, Defendant raised additional arguments not made in the pleadings. Defendant's arguments were insufficient to alter the Court's ruling; however, given the significance of the denial of leave to amend to the disposition of this action, an explanation of the insufficiency of Defendant's additional arguments is appropriate.

*1. The Additional Claims for Relief are Not Tolled by §108(c)*

First, Defendant argues that the statute of limitations was tolled under §108. Defendant does not specify which provision of §108 applies. Sections 108(a) and (b) pertain to actions commenced by the debtor; §108(c) is the only section which could conceivably toll Defendant's claims.

Section 108(c) is inapplicable to Defendant's proposed additional claims. Section 108(c) preserves actions that cannot immediately be brought because of the automatic stay. The stay does not bar Defendant's counterclaims or affirmative defenses. *See Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*, 886 F.2d 1233, 1237 (9th Cir. 1989) ("The stay does not operate against the court with jurisdiction over the bankrupt"); *In re Bird,* 229 B.R. 90, 95 (Bankr.S.D.N.Y.1999) (internal citations omitted) ("The purposes of the automatic stay, to preserve the assets of the debtor for the benefit of all creditors and to protect the creditors from each other by stopping the race to seize the debtor's assets, are not advanced by disallowing suits against the debtor in the court where the bankruptcy case is pending. In fact, the opposite is true. Having such litigation go forward in what can be termed the home court centralizes all actions against the debtor in one forum under the control of one court and thereby aid the home court in protecting the debtor and creditors and in efficiently administering the estate.").

*2. The Additional Claims for Relief Do Not Relate Back Under Fed. R. Civ. P. 15(c)(1)(B)*

Second, Defendant argues that the proposed additional allegations relate back to the original counterclaim under Fed. R. Civ. P. 15(c)(1)(B) (made applicable to these proceedings by Fed. R. Bankr. P. 7015). Fed. R. Civ. P. 15(c) provides: "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

The original Answer and Counterclaim [Doc. No. 15] alleges, as an affirmative defense, "a total want or failure of consideration as debtor never paid any money or gave anything of value to [sic] plaintiff [should be Defendant] for the property that is the subject of plaintiff's complaint." ¶ 39. The original Answer and Counterclaim alleges, as a counterclaim, declaratory judgment that the 2007 Deeds be voided based upon "a total want of consideration and the subject property is not part of the debtor's bankruptcy estate." ¶ 43. There are no allegations of fraud, undue influence, or mistake.

The proposed amended counterclaim contains detailed allegations of fraud, undue influence, and mistake:

- ¶ 39. Some time prior to December 28, 2007, the debtor asked [Defendant] Popovich to sell her the Dresher property. The debtor represented to Popovich that she was newly widowed, that she wanted to move to Texas to be near her family and that she would be

8

receiving a large inheritance sufficient to purchase the Dresher property from Popovich. Debtor was considerably more sophisticated than Popovich: Debtor had travelled the world as a flight attendant, Debtor had been married to a doctor for over thirty years, Debtor had enjoyed substantial wealth and privilege during her adult life, and Debtor lived amongst the very affluent of Los Angeles during that time. Popovich, on the other hand, has been a ramp agent for an airline in Houston, Texas, for thirty years; Popovich is not nearly as sophisticated as the debtor; Popovich trusted the debtor completely due to their familial relationship; and, Popovich felt sorry for the debtor for having just lost her husband.

- ¶ 40. Popovich unwittingly deeded the Dresher property to the debtor based upon the foregoing factors as well as her promise to later pay for the Dresher property with her purported inheritance. Popovich would not normally have deeded the Dresher property to any person without having received actual payment first. But, because of the circumstances set forth above, the representations by the debtor and her exercise over Popovich's sensibilities, Popovich deeded the Dresher property to the debtor prior to receipt of payment. At no time did the Debtor disclose to Popovich that the debtor was unlikely to receive an inheritance.
- ¶ 42. The debtor's promise to pay Popovich for the Dresher property constitutes fraud because at the time the debtor asked Popovich to sell the debtor the Dresher property, the debtor either knew that she would not be receiving an inheritance (intentional fraud); or, she knew that she would not likely be receiving an inheritance (concealment); or, she knew that she was at risk of not receiving an inheritance (negligent fraud). At that time, the debtor knew that had she disclosed any of the foregoing to Popovich, Popovich would not have deeded the Dresher property to the debtor.
- ¶ 43. Popovich relied on the foregoing material representation made by the debtor that she was coming in to an inheritance, and deeded the Dresher property to the debtor based thereon.
- ¶ 44. As a result of the foregoing, the debtor procured the deed from Popovich by fraud and/or undue influence.
- ¶ 45. Pleading in the alternative, Popovich deeded the Dresher property to debtor based upon the mistaken fact that the debtor would be receiving an inheritance; a mistake of fact that was held by both Popovich and the debtor; which materially affected the agreed-upon exchange, specifically, that the debtor would have the funds to pay Popovich when the debtor received her inheritance. But for this mistake of fact, Popovich would not have deeded the Dresher property to the debtor.
- ¶ 50. As a result of the facts alleged in paragraphs 39 through 41 herein, Popovich requests the court to enter judgment for rescission of the 2007 contract between Popovich and the debtor, such that the contract is avoided, and the parties are returned to their respective positions as if no contract ever existed.

Doc. No. 116, Ex. B.

"An amended claim arises out of the same conduct, transaction, or occurrence if it 'will likely be proved by the "same kind of evidence" offered in support of the original pleading.'" *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (internal citations omitted). In addition:

> In deciding whether an amendment to state a new claim against the original defendant is proper, the policies underlying the statute of limitations are implicated. *See Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 738–39 (9th Cir.1982). Thus, amendment of a complaint is proper if the original pleading put the defendant on notice of the "particular transaction or set of facts" that the plaintiff believes to have caused the complained of injury. *Id.* at 739. Fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff. *See, e.g., id.* ("It is apparent from [the plaintiff's] original complaint that [the defendant] was not taken by surprise by the addition of the claim for interference with employment relations."); *see also Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983) (observing that "the Title VII proceedings should have put defendants on notice of the possibility that [the plaintiffs] might bring claims under the Civil Rights Act"), *aff'd,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

*Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 979 (9th Cir. 1988) (internal citations omitted).

Here, the allegations in the original Answer and Counterclaim—that the 2007 Deeds should be rescinded because of a failure of consideration—do nothing to put the Trustee on notice of a claim of rescission by reason of fraud, undue influence, or mistake. The Trustee could not have anticipated that she would be required to defend against such allegations based on the original Answer and Counterclaim.

Nor can the additional allegations be proven by the same type of evidence. The evidence required to demonstrate a failure of consideration is straightforward—namely, proof that no consideration was paid for the Properties. The evidence required to demonstrate fraud, undue influence, or mistake is of an entirely different character. For example, to prove fraud under Texas law, Defendant would have to present evidence establishing that the Debtor (1) made a material false representation (2) either knowing the representation was false or with recklessness as to the truth of the representation (3) with the intent that the Defendant should act upon the representation. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. Ct. App. 2011) (setting forth the elements of fraud). To prove undue influence, Defendant would have to establish that Defendant's "free agency [was] destroyed and the will of the wrongdoer [was] substituted therefor." *Eulenfeld v. Weber*, 428 S.W.2d 383, 387 (Tex. Civ. App. 1968). To prove mutual mistake, Defendant would have to establish that Debtor and Defendant "believe[d] in the present existence of the thing contracted for, that thing is material to the transaction, and that thing does not exist." *River Production Co., Inc. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 738 (5th Cir. 1990).

The upshot is that for Defendant to establish rescission under any of Defendant's theories, highly particularized evidence regarding Debtor and Defendant's intentions and state of mind at the time of the 2007 Deeds would have to be presented. The scope and detail of such evidence far exceeds the evidence necessary to support Defendant's original Answer and Counterclaim.

As the Ninth Circuit explained in *Percy*, the limitations on relation back were designed for precisely the type of situation that now confronts the Court. At this late stage in the proceedings, requiring the Trustee to defend against these new claims for relief, which are of an entirely different character than the original claims, would be highly prejudicial. Relying upon the original Answer and Counterclaim, the Trustee has taken no discovery with respect to the allegations of fraud and undue influence. *See* September 16, 2015 Oral Argument on Motion for

10

Leave to Amend (audio on file with Clerk of the Court) ("[T]he Trustee didn't take discovery into the allegations of fraud and undue influence because they're not at issue. Why would we waste money going to Texas to take depositions of people about claims that aren't yet in the pleadings?").

### *3. Raising the Additional Claims for Relief in Opposition to the Trustee's Motion for Summary Judgment Does Not Preserve Those Claims*

Debtor raised the issue of rescission based upon fraud and undue influence for the very first time in opposition to the Trustee's motion for summary judgment. Doc. No. 109 at 6–7. Affirmative defenses not pleaded in an answer may be raised in opposition to a motion for summary judgment only if there is no prejudice to the party seeking summary judgment. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). As discussed above, permitting the new affirmative defenses would prejudice the Trustee.

Defendant has had ample notice of the necessity of seeking leave to amend. On December 10, 2013, in a ruling denying Defendant's motion for summary judgment, the Court explained that Defendant's counterclaim was deficient:

> However, even if the amount of the consideration was known, under Texas law, "ordinarily, a mere want of consideration is not ground for the avoidance of an executed deed. In addition to lack of consideration, fraud, or undue influence in obtaining the instrument must also appear." *Uriarte v. Petro*, 606 S.W. 2d 22, 24 (Tex.Civ.App., 1980). Defendant does not allege fraud or undue influence on the part of Debtor or any facts supporting such claims. Consequently, there are genuine issues of material fact regarding fraud and undue influence as well.

Ruling Denying Defendant's Motion for Summary Judgment [Doc. No. 45] at 18.

Defendant was aware of the deficiency in the counterclaim and could have amended it anytime within the next eighteen months without running afoul of the statute of limitations.

Even if the Court were to disregard Defendant's unexplained delay and ignore the resulting prejudice to the Trustee, the statute of limitations would still be fatal to Defendant's claims.[6]

---

[6] The Court has conducted a thorough review of the dockets of both adversary proceedings. None of the following pleadings, all filed by Defendant prior to the July 1, 2015 opposition to the Trustee's motion for summary judgment, contain any mention of a claim for rescission based upon fraud, undue influence, or mutual mistake. Documents filed in Adv. No. 2:13-ap-01007-ER:
  1. Defendant's Motion for Summary Judgment [Doc. No. 37]
  2. Defendant Miguel Popovich's Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment [Doc. No. 38]
  3. Joint Pre-Trial Statement [Doc. No. 71]
  4. Motion for Jury Trial [Doc. No. 75]
  5. Reply to Opposition to Motion for Jury Trial [Doc. No. 80]
  6. Opposition to Plaintiff's Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 91]
  7. Amended Opposition to Plaintiff's Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 92]
  8. Withdrawal of Opposition to Plaintiff's Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 93]
  9. Amended Joint Pre-Trial Statement [Doc. No. 108]

Documents filed in Adv. No. 2:13-ap-01008-ER:

Defendant's opposition to the Motion for Summary Judgment, which raised the claims for the very first time, was filed on July 1, 2015. As the Court explained in its ruling denying Defendant's Motion for Leave to Amend (excerpted above), the statute of limitations on Defendant's rescission claim expired, at the very latest, on June 1, 2015 (it is possible that the limitations period may have expired well before June 1, 2015). That is, claims expired one month before Defendant raised them in the opposition.

### C. Defendant's Theory that the Estate Acquired Only Bare Legal Title is Contrary to the Facts and Contrary to Texas Law

"Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). In evaluating Defendant's contention that no fraudulent transfer could occur because Debtor possessed only bare legal title to the Properties, the Court must look to Texas state law.

Disregarding this principle, Defendant cites a number of cases in which bankruptcy courts concluded that no fraudulent transfer occurred because debtors held only bare legal title to the properties at issue—but none of the cases apply Texas law. *See, e.g.*, *Geremia v. Dwyer (In re Dwyer)*, 250 B.R. 472 (Bankr. D. R.I. 2000) (debtor's pre-petition transfer of property to his mother was not fraudulent, where the mother paid all mortgage and tax obligations on the property, which was held in debtor's name based on the advice of the mother's non-attorney brother-in-law); *Jensen v. Gillman (In re Gillman)*, 120 B.R. 219 (Bankr. M.D. Fla. 1990) (same); *Torrez v. Torrez (In re Torrez)*, 63 B.R. 651 (9th Cir. BAP 1986) (debtor's pre-petition transfer of property to his parents was not fraudulent, where title was held in son's name only to assist parents in defrauding the Lower Tule River Irrigation District).

Nor do any of these cases engage in any meaningful analysis of the property law of the states in which they were decided.[7] Notably, those authorities that do meaningfully analyze applicable state property law often reject the theory that no fraudulent transfer occurred because the debtor

---

1. Defendant's Motion for Summary Judgment [Doc. No. 38]
2. Defendant Miguel Popovich's Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment [Doc. No. 39]
3. Joint Pre-Trial Statement [Doc. No. 70]
4. Motion for Jury Trial [Doc. No. 75]
5. Reply to Opposition to Motion for Jury Trial [Doc. No. 80]
6. Opposition to Plaintiff's Motion for (1) (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 91]
7. Amended Opposition to Plaintiff's Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 92]
8. Withdrawal of Opposition to Plaintiff's Motion for (1) Leave to Amend Affirmative Defenses in Answer to Cross-Complaint; and (2) To Amend Pre-Trial Statement [Doc. No. 93]
9. Amended Joint Pre-Trial Statement [Doc. No. 109]

[7] *Kramer v. Chin (In re Chin)*, 492 B.R. 177 (Bankr. E.D.N.Y. 2013), cited by Defendant, does contain extensive analysis of New York fraudulent conveyance law—though it contains no meaningful discussion of how New York property law could result in a debtor having only bare legal title to the property at issue. However, the *Chin* court's ruling did not rely upon a determination as to whether or not Debtor held bare legal title. Instead, the ruling in Debtor's favor stemmed from the Trustee's failure to provide the necessary evidence to support the Trustee's causes of action. For example, the Trustee's unjust enrichment theory failed because the Trustee submitted no evidence showing that the Debtor's retention of the property "would be unjust," as required by New York law. 492 B.R. at 125. The Trustee's state law fraudulent conveyance cause of action failed because there was no evidence that the Debtor was insolvent at the time of the transfer. *Id.* at 132. (By contrast, in the present case there is no dispute that the Debtor was insolvent at the time of the transfer.)

held only bare legal title. *See, e.g.*, *In re Kirchner*, 372 B.R. 459, 463–65 (Bankr. W.D. Wis. 2007) (although debtor's parents had supplied the funds to purchase property held in debtor's name, application of Wisconsin property law required the court to find that debtor held title to the property and that debtor's transfer of the property to his parents was avoidable).

Applying relevant Texas law, the Court finds no merit to Defendant's theory that he reacquired an equitable interest in the Properties at some point subsequent to execution of the 2007 Deeds. Defendant's theory is predicated upon an alleged oral contract between Defendant and the Debtor, under which the Debtor would make additional unspecified payments for the Properties after receiving her inheritance.

Under the doctrine of estoppel by deed, no evidence of the alleged oral agreement is admissible: "The rule has been announced and applied many times in this state that when consideration expressed in a deed or other contract is contractual and there is no allegation of fraud, accident or mistake, parol evidence is not admissible to contradict or vary the consideration so expressed, if the result would be to change or defeat the legal operation and effect of the instrument." *Kidd v. Young*, 190 S.W.2d 65 (Tex. 1945). As discussed previously, Defendant's allegations that the deed was tainted by fraud, undue influence, and mistake are now time-barred. Therefore, the 2007 Deeds must be given full force and effect.

### D. Defendant's Theory that the 2007 Deeds Must Be Rescinded Based Upon Failure of Consideration is Contrary to Texas Law

Defendant contends that the 2007 Deeds must be rescinded based upon "a total want of consideration." Defendant's Original Answer and Counterclaim [Doc. No. 15] at ¶ 43. Under Texas law, "a mere want of consideration is not ground for avoidance of an executed deed. In addition to lack of consideration, fraud or undue influence in obtaining the instrument must also appear." *Uriarte v. Petro*, 606 S.W.2d 22, 24 (Tex. Civ. App. 1980). Defendant's claims for relief based upon fraud and undue influence are time-barred. Defendant's counterclaim for rescission based upon lack of consideration fails.

### E. The 2011 Deed Effected an Intentionally Fraudulent Transfer Avoidable Under §544(b) Applying CCP §3439.04

Section 544(b)(1) permits the trustee to "avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." The "applicable law" in this case is CCP §3439.04, California's implementation of the Uniform Fraudulent Transfer Act,[8] which provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

---

[8] Although the Properties are located in Texas, California law applies for purposes of determining whether the transfer is avoidable. The Trustee's §544(b) strong-arm powers are asserted on behalf of creditors located in California. Because the Debtor lives in California, those creditors could have sought to avoid the transfers under California law, but for the fact that the Trustee acquired their avoidance rights upon the filing of the bankruptcy.

13

    (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
    (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
  (b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
    (1) Whether the transfer or obligation was to an insider.
    (2) Whether the debtor retained possession or control of the property transferred after the transfer.
    (3) Whether the transfer or obligation was disclosed or concealed.
    (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
    (5) Whether the transfer was of substantially all the debtor's assets.
    (6) Whether the debtor absconded.
    (7) Whether the debtor removed or concealed assets.
    (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
    (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
    (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
    (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

  The Trustee has identified three unsecured creditors with allowable claims against the Debtor's bankruptcy estate. Part II, Undisputed Facts, at ¶¶ 14–17. Therefore, the Trustee has standing to seek avoidance under §544(b).

  Here, the evidence establishes that the Debtor executed the 2011 Deed, transferring the Properties to the Defendant, "[w]ith actual intent to hinder, delay, or defraud" creditors. Multiple badges of fraud are present. The transfer was made to an insider, the Debtor's brother. *Id.* at ¶ 3. Debtor did not disclose the transfer as required by questions on Debtor's Statement of Financial Affairs. *Id.* at ¶¶ 11–12. Debtor was embroiled in litigation at the time the transfer was made. *Id.* at ¶¶ 7–8. The transfers constituted a transfer of substantially all of the Debtor's assets. In 2011, the tax-appraised value of the Properties was $574,707.[9] In her amended schedules, Debtor lists assets of only $104,784.92 ($82,930.93 in real property and $21,853.99 in personal property). *Id.* at ¶13. The Debtor was insolvent at the time the 2011 Deed was executed. *Id.* at ¶18.

---

[9] The 610 Dresher Property was appraised at $435,000 by Harris County taxing authorities. The 614 Dresher Property was appraised at $139,707 by Harris County taxing authorities. *See* Part II.D., Undisputed Facts at ¶¶ 19–20. Tax assessments are admissible to prove the value of real property. *Christopher Phelps & Assocs. LLC v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007).

### F. The 2011 Deed Effected an Intentionally Fraudulent Transfer Avoidable Under §548(a)(1)(A)

Section 548(a)(1)(A) provides: "The trustee may avoid any transfer … of an interest of the debtor in property … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily made such transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made … indebted."

Because "it is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors," courts "frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud." *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805 (9th Cir. 1994). Those badges of fraud include "(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer." *Id.*

As discussed previously, multiple badges of fraud are present. Debtor was involved in litigation at the time of the transfer; the transfer was of a significant amount of Debtor's property; the Debtor became insolvent after the transfer; and the transfer was to Debtor's brother. The transfer was intentionally fraudulent under §548(a)(1)(A).

### G. The 2011 Deed Effected a Constructively Fraudulent Transfer Avoidable Under §548(a)(1)(B) and Under §544(b) Applying CCP §3439.05

Section 548(a)(1)(B) permits the trustee to avoid a transfer if the Debtor "received less than a reasonably equivalent value in exchange for such transfer" and if the Debtor:
1. was insolvent on the date that such transfer was made … or became insolvent as a result of such transfer …; [or]
2. intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debtors matured.

Section 544(b) permits the trustee to avoid transfers of the debtor under applicable state law. CCP §3439.05, which is substantially identical to §548(a)(1)(B), provides that a "transfer made … by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made … if the debtor made the transfer … without receiving reasonably equivalent value in exchange for the transfer … and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."

The Debtor did not receive reasonably equivalent value for the Properties. The Properties were transferred to Defendant for $10. At the time the of the 2011 transfer, the tax-appraised value of the 610 Dresher Property was $435,000; the tax-appraised value of the 614 Dresher Property was $139,707. Part II, Undisputed Facts, at ¶¶ 19–20. The Debtor became insolvent subsequent to the transfers. *Id.* at ¶18. The transfers are avoidable under §§548(a)(1)(B) and 544(b) by means of CCP §3439.05.

### H. Defendant's Counterclaim for Improvements Fails Under §§548(c), 550(e), 553, CCP §3439.08, and Texas Property Code §22.01 Because Defendant Was Not a Good Faith Transferee

Defendant seeks "declaratory relief that he is entitled to the value of all improvements he [sic] is made to the subject property and all taxes and other expenses he has paid for the benefit of the subject property and that judgment be entered accordingly." Answer and Counterclaim ¶44. Defendant does not cite any statutory basis for his counterclaim. The Court finds that the counterclaim fails, whether it is construed under §§548(c), 550(e), 553, CCP §3439.08(d), or Texas Property Code §22.021(a).

Section 548(c) provides that a transferee "that takes for value and in good faith has a lien on or may retain any interest transferred … to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." Section 550(e) gives a "good faith transferee" a "lien on the property recovered [by the trustee] to secure the lesser of (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and (B) any increase in the value of such property as a result of such improvement, of the property transferred." CCP §3439.08(d) provides:

> Notwithstanding voidability of a transfer or an obligation under this chapter, a good faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to the following:
> (1) A lien on or a right to retain any interest in the asset transferred.
> (2) Enforcement of any obligation incurred.
> (3) A reduction in the amount of the liability on the judgment.

Texas Property Code §22.021(a) provides a claim to recover the value of improvements to land, but only if the land is possessed in "good faith."

The counterclaim fails under all these statutes because the 2011 transfer was not in good faith. "Even if the transferee gave reasonably equivalent value in exchange for the transfer …, the transferee may not recover such value if the exchange was not in good faith because good faith is 'indispensable' for the transferee who would recover any value given pursuant to 11 U.S.C. § 548(c)." *Hayes v. Palm Seedlings Partners (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990). To determine whether a transfer was in good faith, courts "look to what the transferee objectively 'knew or should have known' … rather than examining what the transferee actually knew from a subjective standpoint." *Id.* at 536. Good faith is not present "if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a *diligent* inquiry would have discovered the fraudulent purpose." *Id.*

Had Defendant conducted a diligent inquiry, he would have been aware that a judgment in excess of $2.6 million had been rendered against a co-defendant of the Debtor in the Doctor Creditor Action. He also would have been aware that the trial had shifted to a phase to determine whether Debtor would be jointly and severally liable for the judgment. These circumstances would place a reasonable person on notice of the Debtor's fraudulent purpose in transferring the Properties. Because good faith is determined based on what the transferee objectively should have known, it is not necessary for the Court to make findings as to Defendant's subjective state of mind. The fact that Defendant should have been aware of Debtor's fraudulent purpose supports a finding that Defendant was not a good-faith transferee. Good faith is a prerequisite to

16

defenses under §§548(c), 550(e), CCP 3439.08(d), and Texas Property Code §22.01. Defendant's lack of good faith dooms these defenses.

To the extent the counterclaim is construed as a claim for setoff under §553, the counterclaim fails. Property recovered by the Trustee as a fraudulent conveyance "cannot be offset against or exchanged for a general unsecured claim." *Wyle v. Rider (In re United Energy Corp).*, 944 F.2d 589, 597 (9th Cir. 1991).

### I. Defendant's Affirmative Defenses of Estoppel and the Statute of Limitations Fail

Defendant asserts that the Trustee is estopped from asserting the claims stated in the Complaint, but provides no basis for the estoppel. There is no privity between a debtor and a trustee upon which a claim of estoppel could be based. *Shuman v. McDonald (In re Shuman)*, 78 B.R. 254, 256 (9th Cir. BAP 1987).

The Complaint is not barred by the statute of limitations. The Complaint was filed on January 4, 2013; the challenged transfer occurred on June 7, 2011. The Complaint was filed within the two-year period required by §548 and within the four-year period required under California's implementation of the Uniform Fraudulent Transfer Act.

## V. Conclusion

The Trustee is entitled to summary judgment on the following claims for relief:
1) Recovery of an intentionally fraudulent transfer pursuant to §544(b) applying California Code of Civil Procedure ("CCP") §3439.04;
2) Recovery of a constructively fraudulent transfer pursuant to §544(b) applying CCP §3439.05;
3) Recovery of an intentionally fraudulent transfer pursuant to §548(a)(1)(A);
4) Recovery of a constructively fraudulent transfer pursuant to §548(a)(1)(B); and
5) Recovery of the Properties, or the value thereof, pursuant to §550(a).

The Trustee is entitled to summary judgment barring each of Defendant's affirmative defenses and counterclaims.

Date: September 30, 2015

Ernest M. Robles
United States Bankruptcy Judge